# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT W. MURRAY, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:06cv1650 (WWE) |
| | : | |
| FRANK J. CARROLL and THE | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF ELECTRICAL WORKERS, | : | |
| | : | |
| Defendants. | : | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE AND MOTION FOR RECONSIDERATION

The genesis of this action is the removal of plaintiff Robert Murray from his office as an elected local union officer of defendant International Brotherhood of Electrical Workers ("IBEW"), a labor organization. Defendant Frank Carroll is the Vice President of IBEW.

Plaintiff has alleged that he was removed as an elected local union officer in retaliation for his speech in violation of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 101(a)(2). The Court has previously granted summary judgment on plaintiff's claim that his removal was in breach of IBEW's Constitution. Defendants have now moved for summary judgment on plaintiff's claim of retaliation. Defendants also move to strike affidavits submitted by plaintiff. Plaintiff has moved for reconsideration of the prior ruling on summary judgment.

## BACKGROUND

The parties have submitted statements of undisputed facts with supporting exhibits, which reflect the following factual background.[1]

Plaintiff's Election and Role As Business Manager

Defendant Carroll was appointed International Vice President for the Second District of IBEW in 1997. He was elected as International Vice President by the delegates to the 2001 IBEW Convention. He was re-elected without opposition in 2006.

Plaintiff is a member of IBEW and its Local Union 35, which represents interior construction electricians. In 2004, plaintiff ran against Kenneth Leech for the position of Business Manager/Financial Secretary of Local 35. The Business Manager is responsible for the day-to-day operations of the local union, including collective bargaining and organizing.

Plaintiff's campaign literature contained no reference to Carroll or any representative of the IBEW. Plaintiff was elected by the membership for the position of Business Manager/Financial Secretary, the principal officer of the local IBEW union.

In September 2004, plaintiff called Carroll's office to complain that the President of Local 35, John Sardo, had appointed Leech as the trustee of Local 35's benefit plans. The IBEW Constitution permits the local union president to appoint trustees, but it requires the president to cooperate with the local union business manager. Plaintiff conveyed his dissatisfaction with Leech's appointment to Carroll, who agreed that Leech should not have been appointed without plaintiff's approval. Carroll then told

---

[1] The Court incorporates herein facts relevant to the IBEW Constitution, plaintiff's accident and his arrest from the Court's prior ruling on summary judgment.

Sardo that he should remove Leech. Carroll indicated that if Leech were not removed, he would take the necessary steps to remove Sardo from office for acting contrary to the IBEW Constitution.

In October 2004, the IBEW Second District conducted a progress meeting for all of the local unions in the district. At that meeting, Carroll spoke about the possibility of improving benefits and reducing costs by merging local union benefit plans. However, Carroll did not retain the authority to order a local union to merge its plans with those of another union, and the decision to merge a benefit plan would have to be made by the plan trustees. At some point, plaintiff told Carroll that he was not in favor of merging benefit plans.

Local 35 operates a hiring hall, which is a mechanism for referring potential employees to employers, pursuant to the terms of a collective bargaining agreement. The local union business manager controls the operation of the IBEW local union hiring hall.

In a letter dated March 24, 2005, Hill wrote to all business managers, notifying them of new rules for the hiring halls referred to as the "three ding" policy. He wrote: "It is the Policy of the IBEW that these rules be included in the referral rules for every local union." Plaintiff did not believe that Local 35 needed to adopt the "three ding policy." He indicated to Carroll that the policy was designed to address problems that did not exist in Local 35. Carroll responded by stating, "I'm not a referral cop." Local 35 did not adopt the "three ding policy." After plaintiff was removed from office, his replacement Sardo did not adopt the "three ding policy."

In summer 2005, Carroll conducted a meeting for the four local union business

managers who represented inside construction local unions within Connecticut. The purpose of the meeting was to discuss the manner in which work should be divided between inside and outside local unions within Connecticut. All four of the local union business managers, including plaintiff, expressed a desire to have their members perform work that was being done by members of the outside local union in Connecticut. Carroll indicated that a resolution to the problem was being sought.

Local 35's collective bargaining agreement affords signatory employers the right to reject any applicant referred by Local 35's hiring hall for any reason whatsoever. Such provision was agreed upon by the IBEW and the National Electrical Contractors Association ("NECA"), a multiemployer association of electrical contractors; this provision is included in every collective bargaining agreement between an IBEW local union and a chapter of NECA. At the 2001 and 2006 IBEW Conventions, a committee appointed by IBEW President Hill recommended adoption of a resolution in favor of removing this provision. Carroll supports removal of the provision, although it has not yet happened.

In either 2004 or 2005, plaintiff filed a grievance on behalf of Local 35 members who had been rejected for employment without explanation by signatory employers.

In 2005, Arnold Veerasammy, a member of Local 35 who was working as a foreman for a Local 35 signatory contractor, complained to Carroll's office that plaintiff had ordered him removed from a job site after his employer had transferred him to that site. International Representative Brian Maher investigated the complaint. He later informed plaintiff that the employer's transfer would stand since the collective bargaining agreement permitted employers to transfer foremen from one job site to

another.

In April 2005, Veerasammy filed internal union charges against Murray with Carroll's office. He alleged that Murray had violated the IBEW Constitution, the local union bylaws and the collective bargaining agreement by prohibiting him from working on a job to which he had been assigned, personally insulting him and accusing him of wrongdoing at a local union membership meeting. Carroll assigned Maher to investigate the charges. On June 28, 2005, Carroll dismissed the charges against Murray for insufficient evidence.

In June 2005, Carroll prepared a letter addressed "To Whom It May Concern," stating that plaintiff's absence for any length of time would cause hardship to plaintiff and to the membership of Local 35. Later that month, at the request of plaintiff's attorney, Carroll prepared a revised letter that added that plaintiff would no longer be able to hold office if he were convicted of a felony.

Plaintiff's Removal

On August 1, 2005, Carroll suspended plaintiff from his elected position. Carroll informed plaintiff by letter that a hearing would be conducted to determine "whether you should be removed from office under Article IV, Section 3(j) of the Constitution" and that Sardo was being appointed to assume plaintiff's position because, as the local union president, he was the next highest ranking elected local union officer. On each of the two prior occasions in which he had removed a local union business manager, Carroll appointed the local union president as replacement.

A letter dated August 4, 2005 from Carroll informed plaintiff that he would be allowed to submit testimony and evidentiary materials and to cross examine witnesses.

In a letter dated August 17, 2005, Carroll wrote that a hearing scheduled for August 29, 2005 would "be limited to the issue of the effect of your conviction for driving while intoxicated on your ability to perform the duties of the office of Business Manager/Financial Secretary of IBEW Local Union 35."

On August 29, 2005, IBEW conducted a hearing to determine whether plaintiff should be removed for the remainder of his term in office. International Representative Richard Panagrossi conducted the hearing, and International Representative Paul Ward presented the charges against plaintiff and submitted the police report of plaintiff's accident, a copy of the hearing in which Murray had pleaded guilty and had been sentenced, and a copy of Connecticut General Statutes section 14-227a, describing the penalties for driving under the influence of alcohol.

Plaintiff appeared at the hearing, called a witness in his own defense and questioned Ward.

On August 31, 2005, plaintiff commenced his prison sentence.

On October 11, 2005, Panagrossi wrote an internal memo that concluded that plaintiff "has been and will continue to be inhibited from performing his official duties as defined in the IBEW constitution." On October 12, 2005, Carroll ordered that plaintiff be removed from his position permanently and that Sardo be named to serve for the remainder of Murray's term.

Plaintiff appealed Carroll's decision to International President Hill. On January 24, 2006, Hill ratified Carroll's decision. Plaintiff appealed that decision to the IBEW

Executive Council. On June 5, 2006, the IBEW Executive Council ratified the removal of plaintiff.

In his deposition testimony, plaintiff stated that he had no conflicts with Carroll.

## DISCUSSION

## DEFENDANTS' MOTION TO STRIKE AND TO IMPOSE SANCTIONS

In support of his opposition to summary judgment, plaintiff has submitted his own affidavit and that of three other individuals, Barry Fraser, Charles Delgado and Herman Benson. Defendants have moved to strike these affidavits as failing to comply with Rule 56(e) of the Federal Rules of Civil Procedure. Defendants also move to strike the affidavits of Fraser, Delgado and Benson on the ground of failure to disclose these individuals pursuant to Federal Rule of Civil Procedure 26(a).

Rule 56(e), partially entitled "Form of Affidavits," requires that supporting and opposing affidavits "shall be made on personal knowledge," and "shall set forth such facts as would be admissible in evidence...." Accordingly, when portions of an affidavit do not comply with Rule 56(e), the trial judge is "free to disregard the inadmissible paragraphs and consider the rest of the affidavit." United States v. Alessi, 599 F.2d 513, 515 (2d Cir. 1979).

A court may therefore strike portions of affidavits which are not made upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements. See, e.g., United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995) (affidavit not made on personal knowledge will not suffice to create issue of fact precluding summary judgment); H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony

that would not be admissible if testified to at trial may not properly be set forth in the Rule 56(e) affidavit); Weeks v. ARA Servs., 869 F.Supp. 194, 196 (S.D.N.Y. 1994) (generalized and conclusory affidavits are insufficient to withstand defendant's motion for summary judgment). To the extent that a Rule 56(e) affidavit contains inadmissible hearsay which references other evidence that is properly before the court, the court may disregard the hearsay but separately consider the admissible evidence. John Hancock Property and Casualty Ins. Co. v. Universal Reinsurance Co., Ltd., 147 F.R.D. 40, 45 (S.D.N.Y. 1993).

Plaintiff's Affidavit

The Court will grant the motion to strike as to the following portions of plaintiff's affidavit containing inadmissible hearsay, generalized conclusory statements, and/or information which could not be attributed to plaintiff's personal knowledge: all references to what the jury could conclude from the evidence; all of paragraph two, which concerns the "implicit approval of the IBEW" for "broken systems of the health and welfare plans and the referral list under Leach;" statements regarding Carroll's political alliance with Leech in paragraph three; the statement asserting that "it was Leech who caused the health and welfare funds to be dangerously underfunded" in paragraph six; statements regarding Maher's job duties in paragraph eight; plaintiff's assertion that "Carroll planned to continue to fail to address the situation" regarding Leech's appointment by Sardo in paragraph nine; assertions concerning Carroll's awareness of the under-funding of the benefit plan and his support for merging the benefit plans in paragraph eighteen; plaintiff's statements regarding Carroll's motivations and thoughts in paragraphs twenty-one, twenty-two, twenty-six, twenty-

seven and twenty-nine; the statement relevant to IBEW's practice and policy in paragraph twenty-eight; and the assertion that Maher spoke to plaintiff "on behalf of Carroll" in paragraph thirty.

The Court has not granted defendants' motion as to all portions requested to be stricken. However, the Court considers all the remaining averments in light of the evidentiary record as a whole in determining the existence of factual disputes.

Affidavits of Fraser, Delgado and Benson

Defendants' request that the Court strike the affidavits of Fraser, Delgado and Benson is grounded upon Federal Rule of Civil Procedure 37(c)(1), which provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence ... on a motion, any witness or information not so disclosed.[2]

The purpose of the preclusion rule is to prevent "sandbagging" an adversary with new evidence. Ventra v. United States, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000). In this instance, plaintiff argues that he had substantial justification for his failure to disclose as provided by Federal Rule of Civil Procedure 37(c)(1). Substantial justification is satisfied where there is a genuine dispute regarding compliance. McCulloch v. Hartford Life & Accident Ins.m Co., 223 F.R.D. 26, 19 (D. Conn. 2004)

The Second Circuit has held that preclusion is a discretionary remedy. Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006). In exercising its discretion

---

[2]Plaintiff was required, pursuant to Federal Rule of Civil Procedure 26(a)(1), to disclose "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information."

whether to impose sanctions, a court should consider: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the evidence to be precluded; (3) the prejudice suffered by the opposing party as a result of the nondisclosure; and (4) the possibility of a continuance. Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

      Plaintiff represents that the failure to disclose Fraser, Delgado and Benson pursuant to Rule 26 during discovery was substantially justified because he received an inadequate answer to one of his interrogatories. Plaintiff served an interrogatory requesting information relevant to individuals who, between August 1, 1996 and July 31, 2006, had filed legal actions similar to that of plaintiff. Plaintiff complains that the information provided was not thorough and did not afford plaintiff the information necessary to discover the individuals he sought. After the close of discovery, plaintiff's attorney contacted the Association for Union Democracy ("AUD"), and was thereafter able to identify Fraser, Delgado and Benson as individuals with testimony that could support his claim. Nevertheless, plaintiff did not inform defendants that the interrogatory answer was unsatisfactory. Further, plaintiff failed to supplement his disclosures pursuant to Rule 26(e), which imposes a duty upon a party to do so whenever that party learns that the prior disclosures were materially incomplete. This duty may be excused if the supplemental information "has otherwise been made known to the parties in writing or in the discovery process." 6 Moore's Federal Practice § 26.12[3] (3d ed. 2008). Thus, plaintiff is not substantially justified because no genuine dispute exists that plaintiff did not comply with his disclosure duties.

Plaintiff contends that the affidavits present admissible evidence of the IBEW's pattern and practice of using the IBEW Constitution's removal procedures to suppress dissent. However, the affidavits are replete with conclusory statements or opinions that are not based on specific facts within the affiant's personal knowledge. Fraser, who was a Vice President of a Local Chapter in Canada, states that he was "brought up on charges of failing to cooperate with the business manager and President because I disagreed with the international union on a number of issues," and that "[e]lected local union officers are not allowed to dissent from the policies and programs advanced by the IBEW International union." Delgado avers: "I am personally aware of several instances where Local Union leaders who refused to comply with some of the unreasonable demands placed on them were removed and replaced as a result of some questionable Article IV, Section 3 charge." Benson describes his credentials as a leader of AUD and appears to be providing expert opinion testimony regarding his observations of international unions and the IBEW. He states, without reference to specific examples:

> In my many years of observing and writing about the IBEW, I learned that when a local union official dissents from the positions and policies espoused by the International union, the local union officer is often accused of violating some provision of the IBEW constitution, and he or she is removed from office by the international union.

To the extent that the affidavits offer any probative evidence, admission of such evidence would be prejudicial to defendants, since they have only learned of such evidence by way of the opposition to the motion for summary judgment. Approximately a year after the close of discovery, a continuance to allow defendants to investigate the

11

assertions made by the affiants would cause the defendants the prejudice of undue delay and expense. Plaintiff's amendment of the complaint to add the retaliation claim has already delayed this case and caused defendants prejudice of having to file two motions for summary judgment. In light of plaintiff's lack of substantial justification, the low probative value of the affidavits and the prejudice to defendants, the Court will exercise its discretion to preclude the affidavits of Fraser, Delgado and Benson. However, the Court will not award monetary sanctions in favor of defendants since preclusion is a sufficient in this instance. See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979). Accordingly, the motion to strike will be granted but the motion for sanctions will be denied.

### Motion for Summary Judgment

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American Int'l Group, Inc. v. London American Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary

judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Defendants argue that plaintiff cannot establish the prima facie case of retaliatory discipline in violation of LMRDA.[3] Plaintiff asserts that his removal from office on the basis of his incarceration is a pretext for retaliation for exercise of his free speech, and that his removal was part of a pattern to suppress any dissent to IBEW policy.

Retaliation

To establish a prima facie case of retaliatory discipline in violation of LMRDA, plaintiff must prove that: (1) his conduct constituted "free speech" under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages. Milne v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 156 F. Supp. 2d 172 (D. Conn. 2001).[4]

The Court agrees that plaintiff has not established a causal connection between his exercise of speech and his removal from office. Plaintiff sets forth that he was

---

[3]Defendants also advance the argument that plaintiff's speech as that of a union officer, as opposed to that of a union member, is not afforded protection pursuant to LMRDA § 101(a)(2). See Schermerhorn v. Local 100, Transport Workers, 91 F.3d 316, 323 (2d Cir. 1996) ("LMRDA's rights of association and expression are limited to union members acting as members and not to union officers acting solely in their capacity as officers"). However, for purposes of ruling on this motion, the Court assumes that plaintiff has engaged in protected speech.

[4]In a private action against a union official for violation of LMRDA § 101, plaintiff must show that the union official "aided, abetted, instigated or directed a wrongful use of union power to deprive a member of his rights." Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1246 (2d Cir. 1979).

removed due to his conflicts with Carroll regarding Leech's appointment, benefit plans, Local 35's hiring hall, implementation of the "three ding policy" and the Veerasammy incident. Plaintiff's evidence fails to raise an inference of a retaliatory animus based on any of these alleged conflicts. In fact, plaintiff's deposition testimony indicated that he did not know whether Carroll opposed plaintiff's plans or positions regarding relations with contractors, funding of benefit plans, the "three ding policy" or the filing of the grievance relative to employers' rejection rights.[5] The evidence demonstrates that Carroll complied with plaintiff's call for the removal of Leech after his appointment by Sardo, and that Carroll dismissed the charges made against plaintiff by Veerasammy.

Plaintiff claims that defendants' reliance upon his incarceration as justification for his removal is pretextual. In support of this contention, he asserts that the prosecutor at his hearing, the report of the hearing officer, and Carroll's statement in his removal decision all present differing version of the allegations brought against him. However, rather than shifting allegations, the statements all concern the ramifications of plaintiff's sentence, including the suspension of his license and incarceration, upon his ability to perform as a business manager. The fact that Carroll cited incarceration as the reason for removal does not raise an inference of pretext since his incarceration prevented plaintiff from performing his official duties. Plaintiff has adduced no evidentiary support for his claim of pretext or dual motivation. Accordingly, the Court will grant summary judgment on plaintiff's claim that his removal was retaliation for his expression of speech.

---

[5] In fact, the "three ding policy" was not implemented by plaintiff's successor.

### Pattern of Suppressing Dissent

Plaintiff asserts that his removal constitutes part of a purposeful and deliberate attempt to suppress dissent within the union.[6] Defendant argues that plaintiff cannot adduce the proof to survive summary judgment on this claim. This Court agrees.

A claim that an officer's removal represents an attempt to suppress dissent within the union requires "clear and convincing proof" that the dismissal was "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." Cotter v. Owens, 753 F.2d 223, 229 (2d Cir. 1985). The Second Circuit has instructed that such claims are allowed to "go forward" where the removal of an officer "stemmed from longstanding and well-documented patterns of harassment and intimidation." Maddalone v. Local 17, United Broth. of Carpenters and Joiners of America, 152 F.3d 178, 184 (2d. Cir. 1998). In this instance, plaintiff's claim relies upon the three affidavits by Fraser, Delgado and Benson that have been struck.

Even if considered, the affidavits do not establish by clear and convincing proof a long-standing pattern of suppressing dissent through removal of officers. Of the three affiants, only Fraser is a former officer who was removed twenty-four years ago. The affidavits of Benson and Delgado provide no specific facts raising an inference of a pattern of officer removal to suppress dissent. Accordingly, the Court will grant summary judgment on this claim.

---

[6]The holding of union office is not considered a union membership right protected under LMRDA; however, the Second Circuit has recognized that removal from union office constitutes a LMRDA violation if it is proven to be part of a purposeful and deliberate attempt to suppress dissent within the union. Schermerhorn, 91 F.3d at 323-24.

Motion for Reconsideration

Plaintiff requests reconsideration of this Court's ruling granting summary judgment on the claim that defendants breached the IBEW Constitution when plaintiff was removed from office. The Court will grant the motion for reconsideration.

Reconsideration may be granted in the discretion of the court when a party can point out an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). A motion for reconsideration may be based solely upon "matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." Such a motion should be granted only where the Court has overlooked facts or precedents which might have "materially influenced" the earlier decision. Park South Tenants Corp. v. 200 Cent. Park South Assocs. L.P., 754 F. Supp. 352, 354 (S.D.N.Y. 1991).

Plaintiff submits that reconsideration is merited because he has provided new evidence indicative of a bad faith animus. This evidentiary material consists of plaintiff's affidavit submitted in opposition to the summary judgment relevant to the retaliation claim, and the affidavits of Fraser, Benson and Delgado. As previously discussed, the affidavits of Fraser, Benson and Delgado have been struck from evidence due to plaintiff's failure to satisfy his disclosure duties. Further, even if considered by the Court, none of the affidavits, including that of plaintiff, contains evidence warranting alteration of this Court's prior decision on summary judgment. Accordingly, the Court will adhere to its prior decision.

**CONCLUSION**

Based on the foregoing, defendants' Motion for Summary Judgment on Count One [doc. # 70] is GRANTED; defendants' Motion to Strike Affidavits [doc. # 86] is GRANTED; defendants' Motion for Sanctions [doc. # 88] is DENIED.

Plaintiff's Motion for Reconsideration [doc. # 85] is GRANTED. However, upon review, the Court adheres to its previous decision.

The clerk is instructed to close this case.

_____/s/_____
Warren W. Eginton
Senior U.S. District Judge

Dated this \_8th  day of July, 2008 at Bridgeport, Connecticut.